1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  SERGIO RODRIGUEZ,            )  Civil No. 11-1216-IEG(WVG)
                                 )
12                  Petitioner,  )  REPORT AND RECOMMENDATION
                                 )  DENYING PETITION FOR WRIT
13  v.                           )  OF HABEAS CORPUS
                                 )
14  B.M. CASH, Warden,           )
                                 )
15                  Respondent.  )
                                 )
16  _____)

17

18                    **I. <u>INTRODUCTION</u>**

19        Sergio Rodriguez (hereafter "Petitioner"), a state prisoner

20  proceeding *pro se* has filed a Petition for a Writ of Habeas Corpus

21  ("Petition") pursuant to 28 U.S.C. § 2254. Petitioner challenges his

22  San Diego County Superior Court convictions of first degree murder

23  and gun use and discharge. (Respondent's Lodgment No. 1, CT 239-42,

24  246-47.)[1] He was sentenced to two consecutive indeterminate terms

25  of twenty five years to life imprisonment. (CT 199-200, 249-50.)

26  Petitioner alleges his conviction and imprisonment violates the

27  _____

28        [1] As used herein, "CT" and "RT" refer to the Clerk's Transcript and the
Reporter's Transcript, from the California Superior Court trial, Respondent's
Lodgment Nos. 1 and 2, respectively.

1   Fifth and Fourteenth Amendments as interpreted in <u>Griffin v.</u>
2   <u>California</u>, 380 U.S. 609 (1965).

3      Respondent B.M. Cash (hereafter "Respondent") asserts that
4   habeas corpus relief is not available because the judgment did not
5   result in a violation of Petitioner's federal constitutional rights,
6   and that the absences of a violation of the U.S. Constitution
7   compels the denial of relief.

8      Based upon a review of the pleadings, documents, and evidence
9   presented in this case, and for the reasons set forth below, the
10   Court **RECOMMENDS** that the Petition be **DENIED**.

11               **II. <u>STATEMENT OF FACTS</u>**

12      This Statement of Facts is taken substantially from the
13   California Court of Appeal unpublished opinion, <u>People v. Rodriquez</u>,
14   case No. D054633 (Respondent's Lodgment No. 6, at 2-4). The Court
15   relies on these facts under 28 U.S.C. § 2254(e)(1).  <u>See</u> <u>Park v.</u>
16   <u>Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical
17   fact, including inferences properly drawn from such facts, are
18   entitled to statutory presumption of correctness).

19      In July 2007, Petitioner, wearing a San Diego Padres jersey,
20   and friend Fernando Gomez separately drove to Wild Woolly's bar in
21   Chula Vista, California.  As the two consumed beers at the bar,
22   Petitioner commented that another person (Andrew Hicks), sitting at
23   a nearby table, was looking at him.  Petitioner then aggressively
24   approached Hicks, yelling and cursing at him.  Two bar security
25   guards who witnessed the confrontation reported Hicks was not
26   aggressive in response to Petitioner.  One of the guards pulled
27   Petitioner away and admonished him to calm down.  Petitioner then
28   offered to shake Hicks' hand, but Hicks refused.  The same guard

11cv1216

1   asked Petitioner to stay away from Hicks.  Petitioner complied by

2   moving to another end of the bar where he socialized for a time

3   before leaving with Gomez through the rear door.

4        After leaving the bar, Petitioner and Gomez drove in Gomez's

5   car to purchase beer, then parked near the bar and stood outside

6   drinking.  Empty beer cans of the same size and brand purchased by

7   Petitioner at the store were found at the scene.  One of the cans

8   had Petitioner's fingerprints on it and two other cans had Gomez's

9   fingerprints on them.  While Petitioner was drinking outside the

10  bar, he used an expletive to refer to Hicks.  Soon thereafter,

11  Petitioner aggressively approached two men who walked out of the bar

12  and began to fight with one of them.  The two men then ran away from

13  Petitioner.

14       Petitioner then walked to his car, retrieved a shotgun and

15  returned with the shotgun tucked into his pants.  At that time Hicks

16  walked out of the bar, Petitioner pulled out the shotgun, and began

17  striking Hicks with it.  Hicks asked, "What did I do?" and grabbed

18  the shotgun, but Petitioner freed it from Hick's hand, stepped back,

19  aimed, and fired.  Hicks fell to the ground and died from the

20  gunshot wound, which hit him in the back on his upper right

21  shoulder.  Stippling around the wound was consistent with the

22  shotgun being fired from a distance no greater than five to eight

23  feet.  The trajectory of the gunshot was consistent with Hicks

24  ducking and turning away when he was struck.

25       A witness heard the gunshot and saw Petitioner hurriedly

26  cross the street while trying to hide something in his pants.

27  Petitioner tried to enter his own car but then ran to Gomez's car,

28  saying he had lost his car keys.  Petitioner told Gomez to drive him

11cv1216

1   home.   Petitioner telephoned his mother on the way to his house and

2   said, "Mom, I f—ed up."   Before Gomez left Petitioner's house,

3   Petitioner admonished him to keep his mouth shut.   That night,

4   Petitioner's sister wrote in her diary that her brother had killed

5   someone.

6       Petitioner subsequently told two other witnesses that he had

7   been in a fight.   One witness saw Petitioner's mother trying to

8   retrieve his car from the area of the murder.   The day after the

9   incident Petitioner told his girlfriend that he had shot someone.

10      Several weeks after the incident, the police arrested

11  Petitioner and searched his house.   During the search, they found a

12  Padres jersey similar to the one Petitioner wore the night of the

13  incident.   The jersey was in the garage, inside a box under some

14  newspaper.   There were small white flakes consistent with shotgun

15  shell buffer on the jersey, and similar to buffer material located

16  at the murder scene.   Although police did not find a shotgun, they

17  did find a shotgun choke tool and shotgun cleaning materials in

18  Petitioner's room.

19                  **III.  <u>PROCEDURAL HISTORY</u>**

20      On December 20, 2007, Petitioner was charge with premeditated

21  and deliberate murder (Cal. Penal Code, §§ 187, 189; count 1), and

22  robbery (Cal. Penal Code, § 211; count 2).   It was alleged that in

23  the commission of the murder, Petitioner intentionally and person-

24  ally used and discharged a firearm proximately causing great bodily

25  injury and death [Cal. Penal Code §§ 12022.53 (d), (c), (b),

26  12022.5(a)]. Petitioner pled not guilty.   (CT 215.)

27

28

11cv1216

1      On November 12, 2008, following a jury trial, Petitioner was

2   found guilty of first degree murder and the firearm use and

3   discharge allegations were found to be true. (CT 239-42, 246-47.)

4      On February 10, 2009, the trial court sentenced Petitioner to

5   twenty five years to life imprisonment on the murder conviction and

6   a consecutive term of twenty five years on the firearm discharge

7   that caused great bodily injury and death.  (CT 199-200, 249-50.)

8      On February 11, 2009, Petitioner filed a Notice of Appeal.

9   (CT 201.)  On December 8, 2009, the California Court of Appeal

10  affirmed the judgment.  (Respondent's Lodgment 6.)

11     Petitioner filed a Petition for Review in the California

12  Supreme Court.  (Respondent's Lodgment 7.)  On February 18, 2010,

13  the California Supreme Court denied review.  (Respondent's Lodgment

14  8.)

15     On May 18, 2011, Petitioner filed the Petition currently

16  before the Court.  Respondent filed an Answer. Petitioner filed a

17  Traverse.

18                  **IV.  <u>PETITIONER'S CLAIM</u>**

19     Petitioner raises one claim in his Petition.  He contends his

20  Fifth and Fourteenth Amendment rights were violated when the

21  prosecution committed prejudicial misconduct during closing argument

22  by commenting on Petitioner's failure to testify, in violation of

23  <u>Griffin v. California</u>, 380 U.S. 609 (1965).  The prosecutor's

24  statements were as follows:

25          Search of his residence.  A hidden jersey.  Why is
            that a hidden jersey?  Why didn't he tell us why
26          Sergio Rodriguez hid that jersey? Why didn't we hear
            about that? Why is that jersey hidden in the garage in
27          a box underneath newspaper?

28          [Griffin objection overruled.]

                            5

1           Ladies and gentlemen, I'm talking about, why didn't
counsel explain to us - he explained to us that that
2           jersey was in the garage, something about it not
having blood on it, and he didn't tell us why it was
3           in the garage.
(3 RT 683.)

4

5                         A. <u>STANDARD OF REVIEW</u>

6           1. <u>Scope of Review</u>

7           Title 28, United States Code, § 2254(a), sets forth the

8 following scope of review for federal habeas corpus claims:

9           The Supreme Court, a Justice thereof, a circuit judge,
or a district court shall entertain an application for
10           a writ of habeas corpus in behalf of a person in custody
pursuant to the judgment of a State court only on the
11           ground that he is in custody in *violation of the
Constitution or law or treaties of the United States*.
12 28 U.S.C. § 2254(a) (2006) (emphasis added).

13           As amended, 28 U.S.C. § 2254(d) reads:

14           (d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judg-
15           ment of a State court shall not be granted with
respect to any claim that was adjudicated on the
16           merits in State court proceedings unless the adjudi-
cation of the claim -
17           (1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
18           established Federal law, as determined by the Su-
preme Court of the United States; or
19           (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
20           the evidence presented in the State court proceed-
ing.
21 28 U.S.C. § 2254(d)(1)-(2) (2006).

22           "[The Anti Terrorism and Effective Death Penalty Act]

23 establishes a 'highly deferential standard for evaluating state-court

24 rulings, which demands that state-court decisions be given the

25 benefit of the doubt.'" <u>Womack v. Del Papa</u>, 497 F.3d 998, 1001 (9th

26 Cir. 2007) (quoting <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002)).

27 To obtain federal habeas relief, Petitioner must satisfy either

28

11cv1216

1  § 2254(d)(1) or § 2254(d)(2).  See Williams v. Taylor, 529 U.S. 362,

2  403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives
> at a conclusion opposite to that reached by this
> Court on a question of law or if the state court
> decides a case differently than this Court has on a
> set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identi-
> fies the correct governing legal principle from this
> Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.
> Id. at 412-13; see also Lockyer v. Andrade, 538 U.S. 63,
> 73-74 (2003).

10  Where there is no reasoned decision from the state's highest

11  court, the Court "looks through" to the underlying appellate court

12  decision.  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  If the

13  dispositive state court order does not "furnish a basis for its

14  reasoning," federal habeas courts must conduct an independent review

15  of the record to determine whether the state court's decision is

16  contrary to, or an unreasonable application of, clearly established

17  Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.

18  2000) (overruled on other grounds by Lockyer, 538 U.S. at 75-76);

19  accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  A state

20  court, however, need not cite Supreme Court precedent when resolving

21  a habeas corpus claim.  Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o

22  long as neither the reasoning nor the result of the state-court

23  decision contradicts [Supreme Court precedent,]" the state court

24  decision will not be "contrary to" clearly established federal law.

25  Id.

26  "A state court's determination that a claim lacks merit

27  precludes federal habeas relief so long as 'fairminded jurists could

28  disagree' on the correctness of the state court's decision."

7

1  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011). The Court observed

2  that the standard is difficult to meet "because it was meant to be."

3  <u>Id.</u> at 786.

**V. DISCUSSION**

A. <u>CLAIM ONE: Griffin Error</u>

6      Petitioner raised this claim in the California Court of

7  Appeal. The Court of Appeal concluded that the prosecutor's comments,

8  "viewed in context... can only be seen as a fair comment on the state

9  of the evidence, comment[s] falling outside the purview of <u>Griffin</u>,"

10  and "the trial court overruled defense counsel's <u>Griffin</u> error

11  objection because the prosecutor's question did not refer directly

12  or indirectly to Rodriguez's failure to testify." (Respondent's

13  Lodgment No. 6, at 7, 10.)  The Court of Appeal addressed Peti-

14  tioner's arguments by examining the context in which the prosecutor's

15  comments were made, and found that the prosecutor did not ask the

16  jury to draw an adverse inference from Petitioner's silence, in

17  violation of <u>Griffin</u>. (<u>Id</u>. at 7.)  The trial court's judgment was

18  affirmed. (<u>Id</u>. at 10.)

19      Petitioner then raised this claim in a Petition for Writ of

20  Habeas Corpus filed in the California Supreme Court. The Petition was

21  denied without a citation to authority or statement of reasoning.

22  (Respondent's Lodgment No. 8.)  As there was no reasoned opinion

23  furnished by the California Supreme Court, this Court "looks through"

24  to the underlying appellate court decision.  <u>Ylst</u>, 501 U.S. at

25  801-06.

1. <u>Discussion</u>

27      The Fifth Amendment prohibits the prosecution from commenting

28  on a defendant's failure to testify by forbidding "either comment by

8

1  the prosecution on the accused's silence or instructions by the court

2  that such silence is evidence of guilt." <u>Griffin</u>, 380 U.S. at 615,

3  fn omitted.  However, "courts will not reverse when the prosecutorial

4  comment is a single, isolated incident, does not stress an inference

5  of guilt from silence as a basis of conviction, and is followed by

6  curative instructions." <u>Lincoln v. Sunn</u>, 807 F.2d 805, 809 (9th Cir.

7  1987).[2]

8        A prosecutor may comment on the defendant's failure to

9  present exculpatory evidence as long as the comments do not call

10 attention to the defendant's failure to testify. <u>United States v.</u>

11 <u>Mares</u>, 940 F.2d 455, 461 (9th Cir. 1991); <u>United States v. Chan</u>

12 <u>Yu-Chong</u>, 920 F.2d 594, 598 (9th Cir. 1990). Comments on the failure

13 of the defense, as opposed to the defendant, to counter or explain

14 the testimony presented are also permissible. <u>Mares</u>, 940 F.2d at

15 461; <u>Chan Yu-Chong</u>, 920 F.2d at 599; <u>see also United States v.</u>

16 <u>Patterson</u>, 819 F.2d 1495, 1506 (9th Cir. 1987)(comments only

17 indirectly referred to defendant's failure to testify). A prosecu-

18 tor's indirect comment violates <u>Griffin</u> only

19              if it is manifestly intended to call attention
                to the defendant's failure to testify, or is of
20              such a character that the jury would naturally
                and necessarily take it to be a comment on the
21              failure to testify.

22 <u>Lincoln</u>, 807 F.2d at 809.

23        Petitioner's claim does not succeed because the prosecutor

24 did not commit a <u>Griffin</u> error by directly or indirectly commenting

25 on Petitioner's failure to testify.

26

27

28

_____

[2] The trial court did not offer a curative instruction here but none was necessary given the prosecutor's comments and the context in which they were made.

11cv1216

1    During opening argument, the prosecutor discussed the

2  evidence and specifically addressed Petitioner's Padres jersey and

3  the location where it was found, arguing that it evidenced a

4  consciousness of guilt:

5        And finally, the shirt worn on the night of the
         killing, that Padres shirt that we talked about.
6        Well, he wears it in his DMV photo, apparently wears
         it when he goes out to a party, goes to a friend's
7        house to drink. Why is it in the garage? Why is it in
         a box underneath a newspaper? Why is it hidden? It is
8        because that's the one he wore on the night he
         murdered Andrew Hicks? Absolutely. Why isn't it
9        hanging in his closet? Why isn't it laying on his bed
         with the rest of his clothes? It's in the closet- in
10       the garage hidden under boxes, underneath this
         newspaper, hoping that nobody will find it.

11  (3 RT 616).

12       Petitioner's counsel, in his argument, scoffed at the

13  assertion that the jersey was hidden or that its location suggested

14  a consciousness of guilt. (3 RT 660-661).

15       During the prosecutor's opening argument, no mention was

16  made, either directly or indirectly, of Petitioner's election to

17  remain silent and not testify. The prosecutor legitimately drew the

18  trier-of-fact's attention to the Padres jersey and its location when

19  it was found. Petitioner's counsel, as expected, attempted to diffuse

20  the damaging evidence and the reasonable inferences to be drawn from

21  that evidence. Petitioner's counsel's closing argument invited the

22  prosecutor's rebuttal comments which were an appropriate response

23  thereto.

24       The prosecutor did not directly address Petitioner's failure

25  to testify in his rebuttal comments. Preceding the comments to which

26  Petitioner objects, the prosecutor stated: "So let's go over some of

27  the things that (defense) counsel talked about." These words placed

28  the prosecutor's subsequent comments in the proper context and must

11cv1216

1  be considered with them. Petitioner looks only to the "offending"

2  argument in isolation without looking to what the prosecutor said

3  before as well as afterward. In the question "why didn't he tell us,"

4  the "he" refers to defense counsel, as evidenced by the words "why

5  Sergio Rodriguez hid that jersey?" immediately following. (3 RT

6  683.) The prosecutor's questioning of why defense counsel did not

7  present exculpatory evidence or testimony to explain why the jersey

8  was hidden is permissible under <u>Mares</u>. After the <u>Griffin</u> objection

9  was overruled, the prosecutor again did not refer to Petitioner's

10  refusal to testify, but asserted "I'm talking about, why didn't

11  *counsel* explain to us..." (3 RT 683)(emphasis added). The use of

12  the word "counsel" shows that the prosecutor was directing his

13  comments to Petitioner's counsel's failure to rebut the evidence

14  presented.

15       Furthermore, the prosecutor's indirect comments did not

16  manifestly intend "to call attention to the defendant's failure to

17  testify." <u>Lincoln</u>, 807 F.2d at 809. The question "[w]hy didn't he

18  tell us why Sergio Rodriguez hid that jersey?" was used as a

19  rhetorical device to call attention to the possibility that Peti-

20  tioner hid the jersey, thereby showing Petitioner's consciousness of

21  guilt. The prosecutor clearly used "he" to refer to defense

22  counsel's failure to address the issue. (3 RT 683.) After the trial

23  court overruled Petitioner's defense counsel's <u>Griffin</u> objection, the

24  prosecutor stated "why didn't counsel explain to us... he didn't tell

25  us why it [the jersey] was in the garage." (<u>Id</u>.) The prosecutor's

26  comments reflect defense counsel's deficiency in addressing the

27  issue, not an indirect attack on Petitioner's election not to

28  testify. Also, the comments were not of "such a character that the

11cv1216

1    jury would naturally and necessarily take it to be a comment on the
2    failure to testify" because of the prosecutor's use of the word
3    "counsel." <u>Lincoln</u>, 807 F.2d at 809.   The prosecutor's remarks were
4    not used impermissibly as they did not convey a direct or indirect
5    referral to Petitioner's failure to testify.

6           Based on an independent review of the record, the Court finds
7    that the California Court of Appeal's and the California Supreme
8    Court's denial of claim one was neither contrary to, nor an unreason-
9    able application of, clearly established Supreme Court law. <u>Greene</u>,
10   288 F.3d at 1089.   Accordingly, the Court **RECOMMENDS** habeas relief
11   be **DENIED** as to claim one.

12                  **VI.   <u>CONCLUSION AND RECOMMENDATION</u>**

13          The Court submits this Report and Recommendation denying all
14   claims in the Petition to United States District Judge Irma E.
15   Gonzalez under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the
16   United States District Court for the Southern District of California.
17   For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the
18   district court issue an Order (1) approving and adopting this Report
19   and Recommendation and (2) directing that Judgment be entered denying
20   the Petition.

21          **IT IS ORDERED** that no later than **<u>January 11, 2012</u>**, any party
22   to this action may file written objections with the Court and serve
23   a copy on all parties.   The document should be captioned "Objections
24   to Report and Recommendation."

25          **IT IS FURTHER ORDERED** that any reply to the objections shall
26   be filed with the Court and served on all parties no later than
27   **<u>January 27, 2012</u>.**   The parties are advised that failure to file

28

11cv1216

1  objections within the specified time may waive the right to raise

2  those objections on appeal of the Court's order.  See Turner v.

3  Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

4  1153, 1156 (9th Cir. 1991).

5

6  DATED:   December 12, 2011

7

8  _____
   Hon. William V. Gallo

9  U.S. Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28